**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case Number: 21-CV-82186-CANNON/REINHART

CHRISTINA COOK,

      Plaintiff,

v.

XL SPECIALTY INSURANCE COMPANY,

      Defendant.
_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION (ECF NO. 14)

  Presently before me is Defendant's Motion to Dismiss the Complaint, for Judgment on the Pleadings, or alternatively, to Compel Arbitration (ECF No. 14), which was referred by the Honorable Aileen M. Cannon for appropriate disposition. ECF No. 18. The motion, brought under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c), alleges that Plaintiff Christina Cook lacks standing to assert her claims, and that the Complaint fails to state a claim for relief that is plausible on its face. ECF No. 14. Alternatively, Defendant seeks an order compelling Ms. Cook to arbitrate this dispute in accordance with the relevant insurance policy's mandatory arbitration clause. *Id.* I have reviewed the Complaint and exhibits attached thereto (ECF No. 1), the Motion, Plaintiff's Response (ECF No. 19) and Defendant's Reply (ECF No. 22). For the reasons explained below, I **RECOMMEND** that Defendants' Motion to Dismiss be **DENIED**, but that Defendant's Motion to Compel Arbitration be **GRANTED.**

## FACTS ALLEGED IN THE COMPLAINT

On or about November 26, 2017, Plaintiff Christina Cook was "on a paid boat charter trip off the coast of Palm Beach County, Florida" when she sustained a severe injury as a result of being "physically struck by the propellers of [the] boat." ¶ 16. The vessel, which was owned by Deep Obsession LLC ("Obsession"), "is a diving vessel that provides scuba, swimming and snorkeling services." ¶ 13.

In the Complaint, Ms. Cook quotes allegations from her earlier state court complaint regarding the accident:

> a. The master of [the vessel] gave the command "dive, dive, dive," and placed the vessel's throttle in clutch astern instead of the neutral position.
>
> \*      \*      \*
>
> d. The master left the vessel [ ] in clutch astern and ordered the passengers in the water, the vessels [sic] propellers were rotating in reverse and created a suction, pulling the Plaintiff, CHRISTINA COOK, towards the propellers. The Plaintiff, CHRISTINA COOK, attempted to grab onto the vessels [sic] swim ladder and platform but was pulled underneath the vessel and struck by the vessel and rotating propellers.

¶ 25.

At the time of the accident, Obsession had a Commercial Wet Marine Insurance Policy (No. XLY0000355) issued by Defendant with liability limits of $1,000,000.00 per occurrence ("the Policy"). ¶¶ 15, 16; Exhibit A. Part B of the Policy states in relevant part as follows:

> We will pay sums which you or a covered person under this policy become legally obligated to pay as a result of the ownership, operation or maintenance of the Insured watercraft because of liability to a Certified Master Diver, Dive master and/or Dive Instructor performing diving services on behalf of you from the insured watercraft as defined under general Maritime Law.

*See* Complaint, Exhibit A at 3.[1]

---

[1] According to the Policy, the entities and individuals covered by the policy are the vessel's owners, the captain, crew members, and the dive master/instructor. Exhibit A at 1-3.

The General Conditions of the Policy under Part G state in relevant part,

> with respect to any other claim for loss, no suit may be brought against us until the amount of the covered person's obligation to pay has been determined by final judgments after trial *or by written agreement signed by you, us and the claimant*[.]

Exhibit A at 22 (emphasis added).

The Policy also contains the following exclusion:

> We do not provide coverage under PART B: LIABILITY COVERAGE for:
>
> k.    bodily injury or loss of life sustained by any person as a direct result of being in the water, exiting the water or preparing to enter the water in connection with scuba (self-contained underwater breathing apparatus), or RSSA (recreational surface supplied air) activities. In addition, coverage is excluded for bodily Injury or loss of life as a direct or indirect result of any sales, rental, lease, service or use of scuba or RSSA equipment of any kind.

*Id.* at 4.

Finally, the Policy contains a mandatory arbitration clause which states:

> Any controversy or claim arising out of, or relating to this agreement, or the breach thereof, shall be settled by arbitration in the county of the Named Assured, in accordance with the rules of the American Arbitration Association, as modified herein . . . This arbitration clause applies to everything in this policy except the APPRRAISAL OF PROPERTY DISPUTES CLAUSE found in this section.

*Id.* at 20.

On March 27, 2019, Ms. Cook filed a lawsuit in state court against Obsession for negligence and sought declaratory relief against Defendant. *See* Complaint, Exhibit D at 1. On February 11, 2020, Ms. Cook executed a Confidential Release and Settlement (the First Settlement Agreement) whereby in exchange for $1 million, Ms. Cook agreed to release Obsession and its "principals, officers, agents, booking agents, referring agents, employees, independent contractors, spouses, affiliated personal and/or businesses successors, assignees, attorneys *and insurers, including but not limited to* . . . Certain Underwriters at Lloyd's, London subscribing to Master Policy Number PL141070 . . . ("Released Parties"), whatsoever, of and from all manner of actions,

3

torts, injuries, causes of action . . . which [Ms. Cook] has, had, or hereafter can, shall, could or may have (or have had) against the Released Parties" for injuries and losses resulting from the diving incident on November 26, 2017.  ECF No. 14-1 (emphasis added).[2]  The First Settlement Agreement further states:

> **It is specifically understood and agreed that this Release is ONLY intended to release the Released Parties to the extent of the insurance coverage provided by the above-referenced professional liability insurance policy.  [Ms. Cook] reserves all rights to pursue a separate claim or cause of action against any persons or entities as a result of the incident . . .**

*Id.* (emphasis in original).  One month after entering into the First Settlement Agreement, Ms. Cook dismissed her initial state court action.  *See* Complaint, Exhibit D.

On or about December 22, 2020, Ms. Cook filed a second lawsuit against Obsession in state court.  ¶ 25.  Ms. Cook resolved her second lawsuit against Obsession by entering into a Settlement Agreement, Assignment and Covenant Not to Execute (the Second Settlement Agreement).  *See* Complaint, Exhibit D.  Pursuant to that agreement, Obsession consented to the entry of a Final Judgment against it for the sum of $3,000,000.00.  ¶ 26.  Ms. Cook agreed not to execute on the judgment, in exchange for an assignment of Obsession's rights under the Policy.  *Id.*[3]  With the instant lawsuit Ms. Cook claims that she is an assignee under the Policy and she seeks to recover the amount of the Consent Judgment from Defendant.  *Id.*

---

[2] The First Settlement Agreement is attached to the motion to dismiss, however a court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  "Undisputed" is defined as "the authenticity of the document is not challenged." *Id.*

[3] The Second Settlement Agreement states that

> the Parties to this Agreement are desirous of reaching an amicable resolution of any matters and/or things in dispute between the parties and, further, Ms. Cook is

4

## **LEGAL STANDARDS**

1. <u>Dismissal under Rule 12(b)(1) - Standing</u>

Federal court plaintiffs bear the burden of establishing that they have Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because lack of standing deprives the court of its constitutional power to adjudicate the parties' dispute, a district court is required to satisfy itself of a party's standing before proceeding to consider the merits of the claims. *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citations omitted).

There are three elements to establish standing. There must be an injury-in-fact (an invasion of an interest that is both concrete and particularized, and actual or imminent), a causal connection between the plaintiff's injury and the challenged action of the defendant, and a likelihood (not merely speculation) that a favorable judgment will redress the plaintiff's injury. *Gardner, supra,* at 1338 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff must satisfy all three elements to establish standing. *Id.* In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019) (quoting *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

---

desirous, as more particularly set forth herein, to pursue the maintenance of the XL Declaratory Judgment Action to require XL to comply with and/or otherwise assume its contractual duties of defense and indemnity under the XL Policy.

ECF No. 1-4 at 1.

2. <u>Dismissal under Rule 12(b)(6) – Failure to State a Claim</u>

A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. *Jordan v. Miami-Dade Cty*., 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006). "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986) (citation omitted). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986). While a complaint does not need to set forth detailed factual allegations to survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). The scope of the court's review on a motion to dismiss is limited to the four corners of the complaint and the documents attached to the complaint or directly referred to in the complaint. *Jordan*, 439 F. Supp. 2d at 1240.

**DISCUSSION**

*Ms. Cook's Standing*

Defendant contends that Ms. Cook lacks standing because she cannot establish a likelihood of future injury and because the agreement she seeks to enforce, the Second Settlement Agreement, is illusory and unenforceable in light of the First Settlement Agreement. ECF No. 14 at 8-10. I reject Defendant's standing arguments. It is well settled that lawsuits seeking a declaration

6

regarding insurance coverage constitute a sufficient controversy to establish standing. *See Tower Ins. Co. of N.Y. v. Rainbow Granite & Marble, Inc.*, No. 10-60052-CV, 2010 WL 1740700, at *2 (S.D. Fla. Apr. 29, 2010) (citing *GTE Directories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567-69 (11th Cir. 1995)). Moreover, Defendant's standing argument requires this Court to engage in a contractual interpretation of the two settlement agreements (at least one of which appears to contain internally inconsistent language) as well as the Policy, all of which must be viewed in Ms. Cook's favor at this stage (*see Warth v. Seldin*, 422 U.S. 490, 501 (1975)), thereby precluding dismissal. *See Tarantino v. Riddell*, No. 17-CV-60567, 2018 WL 2011551, at *5 (S.D. Fla. Apr. 30, 2018) ("Interpretation of ambiguous contracts at the motion to dismiss stage is generally inappropriate since it requires a court to examine facts and 'make determinations based on what one party believes the language of the contract to say.'") (quoting *Whitney Nat. Bank v. SDC Communities, Inc.,* No. 809CV01788EAKTBM, 2010 WL 1270266, at *5 (M.D. Fla. Apr. 1, 2010)). Finally, I find that Ms. Cook's Complaint (and the attachments thereto) alleges facts sufficient to establish her privity of contract so as to satisfy the requirement of standing.[4]

### *The Policy's Arbitration Clause*

As an alternative to dismissal, Defendant seeks to have the Policy's mandatory arbitration clause enforced. Defendant argues that the Policy's arbitration clause, which provides that "[a]ny controversy or claim arising out of, or relating to this agreement, or the breach thereof, shall be

---

[4] According to Ms. Cook, the First Settlement Agreement was for purposes of accepting a tender of the policy limits by Obsession's primary insurer, Lloyd's of London, and involved only a "partial release" whereby the parties "specifically reserved all rights against this Defendant," with whom Obsession had an excess liability policy. ECF No. 19 at 1-2.

settled by arbitration . . ." is "broad and unambiguous" and, thus, the coverage dispute must be decided via arbitration. ECF No. 22 at 8-9.[5]

It is well settled that the Federal Arbitration Act ("FAA") reflects "a liberal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Claims are subject to arbitration where they fall within the scope of a valid and enforceable arbitration agreement. *See, e.g., Benoay v. Prudential-Bache Sec. Inc.*, 805 F.2d 1437, 1348 (11th Cir. 1982). "Where an agreement to arbitrate has been formed, the court must treat the agreement as 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9. U.S.C. § 2. "Under the FAA, an agreement can be 'defeated by fraud, duress, unconscionability, or another generally applicable contract defense.'" *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017). Whether an enforceable agreement to arbitrate exists is a matter of state contract law. *Id.* at 1303. Under Florida law, an assignee is bound by an insurance policy's arbitration clause. *See Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) (finding that Florida law does not require an assignee's assent before she can be subject to an insurance policy's arbitration provision because Florida law treats arbitration as a "remedial mechanism" that is included in any assignment) (citing *Cone Constructors, Inc. v. Drummond Community Bank*, 754 So.2d 779 (Fla. Dist. Ct. App. 2000)).

---

[5] Ms. Cook counters that under Florida law, "issues of [insurance] coverage are for a court to decide rather than arbitrators." ECF No. 19 at 18-19 (citing *Atencio v. U.S. Sec. Ins. Co.*, 676 So. 2d 489, 490 (Fla. Dist. Ct. App. 1996) and *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002)). However, the two cases she cites are inapposite because the policies in those cases contained appraisal clauses whereby a panel determines the amount of loss; neither case addressed the applicability of a broad arbitration clause like the one at issue here which clearly encompasses causation and coverage issues. Simply put, "Florida courts must enforce arbitration agreements that are valid and enforceable under the Federal Arbitration Act . . ." *Smith v. Nummy*, No. 5:09-CV-306/RS/MD, 2009 WL 10674324, at *2 (N.D. Fla. Dec. 3, 2009) (quoting *Jensen v. Rice*, 809 So.2d 895, 899 (Fla. Dist. Ct. App. 2002)).

Here, the Second Settlement Agreement specifically states that Ms. Cook seeks an assignment of Obsession's rights under the policy so she can "require [Defendant] to comply with and/or assume its contractual duties of defense and indemnity under the [ ] Policy." ECF No. 1-4 at 1. Thus, Ms. Cook seeks to enforce the Policy to the extent it benefits her; however, Ms. Cook also seeks to avoid being bound by the arbitration clause contained therein. This inconsistent position is untenable and unsupported by either Florida law or the FAA.

Although I find the Policy requires this dispute to be arbitrated, in the interest of completeness, I will address Defendant's arguments on the merits.

*Coverage under the Policy*

Defendant contends that the Complaint must be dismissed and judgment entered in its favor based on the limitations of the Policy. Defendant contends that Ms. Cook is not a legitimate assignee under the Policy because Defendant was not a signor to the Second Settlement Agreement and the Policy prohibited Obsession from binding Defendant without its consent. Ms. Cook counters that insureds are permitted to enter into such *Coblentz* agreements where the insurer unjustifiably refuses to defend the insured.[6] Defendant does not cite to any legal authority to challenge Ms. Cook's argument regarding the applicability of *Coblentz*.

Alternatively, Defendant argues that the Policy's "in the water" and scuba diving exclusions (ECF No. 1-1 at 4) also preclude Ms. Cook's lawsuit. At this stage of the proceedings the facts are not sufficiently developed to establish the applicability of these Policy exclusions,

---

[6] The term "*Coblentz* agreement" comes from the case *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969). "In a *Coblentz* agreement, the underlying tort plaintiff releases the insureds from liability in exchange for the insured's right to indemnity from the insurer. Florida courts will uphold a *Coblentz* agreement provided that there is coverage, the insurer wrongfully refused to defend the underlying suit, and the agreement is reasonable and entered in good faith." *Allstate Ins. Co. v. Andrews Florist on 4th St., Inc.*, No. 8:08-CV-2253-T-EAJ, 2011 WL 672349, at *1 n.2 (M.D. Fla. Feb. 17, 2011) (citation omitted).

and in any event, I must view the facts in the light most favorable to Ms. Cook and therefore recommend that Defendant's motion to dismiss the Complaint for these reasons be denied.

Finally, Defendant contends that dismissal is appropriate because the First Settlement Agreement, wherein Ms. Cook purportedly released all of Obsession's insurers, precludes this lawsuit. As an initial matter, I find that Defendant's reliance on the First Settlement Agreement (which is not attached to the Complaint) does not convert this motion into one for summary judgment because the document is central to Ms. Cooks claim and she does not appear to challenge the document's authenticity. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Nevertheless, given the document's internal inconsistencies (it purports to release all of Obsession's insurers, while simultaneously limiting the scope of the release to one specific insurance policy issued by another insurer) and the parties' dispute over the legal ramifications of this agreement, I decline, at this early stage of the proceedings, to adopt Defendant's position that this First Settlement Agreement mandates dismissal of this lawsuit. For all of these reasons, I reject Defendant's motion to dismiss under Rules 12(b)(6) and 12(c).

### Bad Faith Claim

Count III of the Complaint alleges a bad faith claim against Defendant, which Defendant argues is premature and should be dismissed. Ms. Cook concedes that her bad faith claim is unripe but argues that the claim should be abated until the coverage dispute is resolved and any damages determined. ECF No. 19 at 17.

It is well settled that a predicate to bad faith is a finding that the insurance company is liable to an insured. *Doan v. John Hancock Mut. Life Ins. Co.*, 727 So.2d 400, 402 (Fla. Dist. Ct. App. 1999). "[I]n recent years Florida courts have moved toward 'greater use of abatement as a mechanism for delaying the adjudication of matters that have not yet become ripe.'" *Doe v.*

*OneBeacon Am. Ins. Co*., No. 1:11CV275-MP-GRJ, 2012 WL 1632222, at *1 (N.D. Fla. May 8, 2012) (quoting *O'Rourke v. Provident Life and Acc. Ins. Co*., 48 F.Supp.2d 1383, 1384 (S.D. Fla. 1999)). Accordingly, I recommend that Ms. Cook's bad faith claim be abated pending resolution of her coverage claims. *See Beggs v. Liberty Mut. Ins. Co*., No. 18-80710-CIV, 2018 WL 8264633, at *2 (S.D. Fla. Sept. 12, 2018) (finding judicial economy favors abatement of bad faith claim until the coverage claim is resolved).

## RECOMMENDATION

Based on the foregoing, I hereby **RECOMMEND** that Defendant's Motion to Dismiss (ECF No. 14) be **DENIED**, but that Defendant's Motion to Compel Arbitration be **GRANTED.**

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 21st day of April 2021, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE